Good morning. May it please the court, Christopher Stender on behalf of the petitioner Moris Quiroz Parada. We have asked that this case be referred to mediation. We have an unopposed motion pending. We respectfully request that that be the court's order in this matter. It appears to me as his counsel that he's actually eligible for what's called late initial TPS filing. If he is granted that status, he potentially then would be able to adjust his status because the TPS, if granted, would be an admission, and he'd be able to get his lawful permanent residence status. What happens to the petition in this case, then? I believe there's concurrent jurisdiction right now since U.S. What do we do with it? Let's say he gets the government agrees to temporary protective status. Does the petition here just sit on the back burner, or what do we do with it? Do we dismiss it? I believe the proper course of action would be remanded to the Board of Immigration Appeals and from there potentially even to the immigration judge since an immigration judge would have the ability to review any decision if TPS were denied. What happens if they revoke TPS status? The government just did that for Nicaraguans. That would be a problem, obviously, then. He would not be able to be granted that status. Then what happens to the petition in that event? It would go back on. I assume it would go back on calendar here and for consideration of what's pending. But if we dismiss it, how can it go back on calendar? I would ask that it be remanded. Well, I would ask for mediation right now pending the resolution of the TPS application. And if it's granted, I would move then that it be sent, remanded back to the Board of Immigration Appeals and then probably either administratively closed or sent back to the immigration judge for disposition. Okay. So that's what you would try and work out with the government, is that the government would agree to a remand to the BIA? Yes, that would be the best course of action from the petitioner's point of view. If the TPS is granted, he has a status and he's not amenable to being deported or removed from the United States. So I think that would be a substantial change in his circumstances. Okay. Well, we have you here, though. Why don't you just address the merits for a few moments? Okay, sure. I think there's three very important factors for the court to consider in this matter. First of all, the immigration judge found that the petitioner's testimony was credible. So everything that he said in the record obviously should be given full force and effect by the court. He did find that family, that this petitioner's family qualified as a particular social group. He made that finding in his written decision. So I think that also is unassailable here. And this is a pre-Real ID Act case, so he's under substantial evidence standard. What I think the most important factor in this case is the judge looked at this case as a forced recruitment case and said, well, if it's just forced recruitment and nothing else, I can't find past persecution because that's not sufficient. And what the judge looked to, particularly as one incident, when the FMLN guerrillas came to the house, tied up his father, who was a marshal. He had some sort of government position, somewhat similar to a sheriff or marshal. Tied him up, and then these guerrillas did nothing to the father at that time. And the immigration judge thought, well, really what's going on here is simple recruitment. They're trying to get the young men into the guerrilla army. You're not being singled out. And what I think what's very important, the judge missed the fact that the petitioner testified that different groups came at different times, that it was not always the same group of guerrillas that came to the house each and every time. And that's in the administrative record on page 160. So different groups coming at different times, albeit they're all guerrilla groups, they're all motivated by that same type of persecution, I think that's a very important fact that the immigration overlooked in this case. Roberts. Or that the IJ said that there wasn't substantial evidence to support the fact that he was here, that he suffered persecution. And in the government's opposition to your brief, which focuses on the fact, the argument that he did suffer persecution, the government just passes right over it. It's like they don't even make any argument at all that he, to support the BIA's decision. So does that suggest to you that they're waiving any objection to pass the? I think it's an interesting record. I think, you know, there was issue whether it was fundamental change in country conditions. I think everybody kind of, the immigration judge early on seemed to hang his hat on that. The government made kind of a weak argument. And everybody just assumed there were changed circumstances, that even if he showed past persecution, even if there is sufficient evidence, and I think that's where the government brief was coming in, that there wasn't reason to grant him asylum now because it's safe for him to return to El Salvador. So I think there is sufficient evidence of past persecution. Again, the incident where the father, they were tied up, he was abducted. Right. Well, the government doesn't seem to take you on on that issue. Wonderful. So then we apply the presumption. And the BIA said even applying the presumption, it was rebutted by changed country conditions. So what do you do with that? Well, I think the record's really sparse here on changed country conditions. I think, for one, it doesn't give any weight to the petitioner's testimony that the FMLN is now really working or has kind of morphed into the former guerrillas or the sons of the guerrillas, or he said it different ways, into the MS. I think that there is proof that he was persecuted under the — this family was persecuted by FMLN guerrillas, and that MS is now kind of morphed into this former guerrilla and sons of the guerrillas. And I think that testimony wasn't given really any value. His father was threatened, eventually killed under suspicious circumstances. I think that's in the record. The record, the country condition report, does have on AR, Administrative Record 260, that an FMLN councilman had killed two national police officers. You know, the record could have had a lot more evidence in it. We have a 2007 country condition report. That's what the government relied on. That's apparently a more current petitioner. This hearing took place in 2013. Right. So the record really is enough to stop. Nobody offered a more current country? One was not available? It wasn't available. Nobody put it in the record? Yeah, and I don't know why. And I don't know why they would pick that one either. It didn't make a lot of sense to me. He applied for asylum back in 1994, so it's not regarding conditions back then. It's not regarding conditions in 2013. Of course, it's now 2017, four more years. But why the 2007 report was submitted, I don't know. It was submitted by the government, actually. They are, of course, under a duty to also submit current country condition reports. I don't have any explanation why they would have done that. And what factual basis was there for the IJ's conclusion that there was a change? He relies on a 2007 report. And after that, he concludes there's been a change, but I see no substantive analysis. That's the problem that I have in the record, too. Again, it seems to be almost like all the parties, there was a tacit agreement that there were changed country conditions because of the peace accords. There's not a lot cited, too, in the record. There's not a lot argued about it by the Petitioner's Council at that time. The government and now the government's brief on appeal, it just kind of presumes that that is the case. And I don't think there's a lot of record evidence. If that is, in fact, the issue, I think the proper course would be remand to supplement the record. Of course, events have changed. You really don't have anything in the record what the current condition was in El Salvador in 2013 when the IJ made its decision. And it doesn't credit the Petitioner's arguments or, excuse me, Petitioner's arguments and his testimony and evidence, which he was found credible, that the MS is former FMLN guerrillas and the sons of the guerrillas. So there is that evidence in the record. There's also that letter from the National Police Force of El Salvador, AR-190, that says that obviously there's a lot of gang violence and things like that. The Contradiction Report of 2007 does also support that. Even the immigration judge finds that in his record. Regarding the CAT claim, there was an issue raised by the government that that was waived. The BIA reached that issue, and I think they reached it de novo. They made an analysis. So I think the CAT claim is before the court. It was argued by us. I think there is a similar case that we cited, Madrigal v. Holder, that I think supports the Petitioner's claim that he has a CAT claim. And for the evidence already mentioned of record, I have nothing further to add. And if I could, then I reserve the balance of my time. Roberts. Very well. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. Jeanette Allen for respondent, the Attorney General. Thank you. Your Honors, as Petitioner's counsel noted, the government did not oppose his request to refer this case to mediation. And as Judge Paez was asking exactly what this would do with the petition for review, it doesn't necessarily impact the continuing validity of the removal order, even if he is granted TPS. He just he can't be removed. The reason we agreed to refer the case to mediation is because oftentimes when one receives TPS, the resolution is to remand the case for administrative closure during the pendency of the TPS. What happens if TPS status is revoked for El Salvadoran? Well, that actually brings up another point, which Petitioner's counsel mentioned, is that because TPS is considered an admission in this circuit, he could potentially have an avenue here to adjust his status, which would then resolve any issue as far as whether TPS is ultimately not extended. Is there anything in the question? As Petitioner's counsel mentioned, TPS, this Court has concluded that it constitutes inspection and admission, which would ultimately render him able to pursue adjustment of status based on certain qualifying relatives. I'm not speaking to the ultimate necessary success of any application in that regard, just that there appear to be potential avenues for alternative remedies here, and that's why the government did not oppose his request to refer the case to mediation. So even if temporary protective status for El Salvadorans is revoked, he can still adjust his status because he obtained it at one point? I don't want to put you on the spot. I don't want to put you on the spot, but I'm just curious. That's my understanding, but again, that's just my understanding, and I'm not sure exactly. It's a fairly recent decision of this Court in that regard. Let me ask you this. If in mediation you work out an agreement to get this back to the BIA, then I gather if protective status is removed, done away with for El Salvadorans, his petition could still be viable. So typically, we're just speaking hypothetically here, if it's removed and if he's able to then adjust status, then the remedy is usually filing a joint motion to reopen and terminate that removal order before the Board. So it would, at the end, if all of these things happen, render the removal order non-final if the Board did grant the joint motion to reopen and terminate. That, of course, would all need to be worked out in mediation and take time. Understood. Well, let's assume for a second that this petition were not before us. What would be the process for TPS? I'm leaving aside this petition. I guess I'm trying to walk through what the mediators would do. Well, the mediators wouldn't necessarily play a role in his separate filing of the application for temporary protected status. The mediation would probably surround the ultimate remanding for administrative closure and whether the parties could agree to that if he is granted TPS. Not to interrupt, but I gather then I'm just trying to walk through the process so that we have what we know what to do with this petition or know what our options are. And I gather that what would happen normally is that we refer to mediation, then the application would be filed, and then if successful, then there would be an agreement to remand. Is that the process? That can be the process, yes, if the parties agree to it, yes. Okay. Let's turn to the merits of the case. Can you explain the reliance on an outdated country conditions report? I can only explain that it was probably the 2007 and 2008 reports were probably the reports in the record because that's when his case was initially referred from the asylum office to the immigration court. Why they weren't renewed subsequently I'm not exactly sure, but the petitioner has never challenged the immigration judge's reliance on those reports. So any argument that it was improper to conclude that circumstances had changed based on the 2008 report would be unexhausted. Well, doesn't he actually argue that, indeed, it was outdated inferentially because he argues that there was no substantive factual basis for the conclusion that there was a change? He argues that, I guess he's not, his argument wouldn't be exhausted with respect to the reliance on the specific record, but if we're talking about whether he challenged the ultimate merits determination that circumstances had changed, yes, that's exhausted, and the board addressed that. And getting to what I believe Judge Pius mentioned that there didn't appear to be any real specific facts mentioned by the immigration judge in his changed circumstances finding, that's not borne out by the record. The immigration judge did cite several things that had changed in El Salvador. Like what? Primarily the 1992 peace accords were signed, therefore the Civil War ended, and at that time FMLN guerrillas were disarmed and have now become a legitimate political party. And I believe the third thing that he mentioned was that the military was restructured. But doesn't he also add that there's still a violence in that country and that MS is still operating and MS had been sort of an arm of the FMLN before it came into power and that there is an acquiescence and they're continuing to mete out punishment? Well, Your Honor, there's no objective evidence here that the Mara Salvatrucha are an arm of the FMLN. There is evidence in the record of widespread violence in El Salvador and the immigration judge certainly recognized that. But widespread violence doesn't provide a basis for asylum withholding, removal, or protection under the Convention Against Torture. So I think the relevance of the gang violence is minimal here because it's so widespread that it wouldn't provide a proper basis for asylum. And his speculation that sons of ex-guerrillas have morphed into the FMLN is not supported by any objective evidence. It's just his testimony that his father believed that this was the case. Who had the burden at that time? Well, he ultimately, this case involves two paths for the burden. One is the government's burden to establish that circumstances had changed and then the other is the alternative determination that he felt to establish his burden to show a well-founded fear. But in the context of rebutting the presumption, that was the government's burden. Did not the IJ simply shift the burden? I don't think that there is any indication here that the immigration judge improperly shifted the burden to Petitioner, and he doesn't make that argument at any point before the agency or before this court as far as I understand. Let me just back up just one little notch. In your brief, when it comes to past persecution, you just say, well, assuming there was past persecution, and the Petitioner's blue brief is all about, the first part is all about, there's not substantial evidence to support past persecution. I couldn't quite figure out what you were doing because the board agreed with the IJ, but the government didn't seem to want to defend what the board did on past persecution. I think it was a litigation strategy here based on the strength of the arguments with respect to future persecution that we needn't address past when we have a clear finding by the agency. Let me ask you, isn't that a waiver of that argument on the government's? Even if it is a waiver, the record doesn't compel. If substantial evidence doesn't support the finding of no past persecution, then he gets the presumption. And then it's the government's clear burden to show changed country conditions. And when you read the IJ's report, he does use language that says, if you go to what his statement was, he says, while the FMLA party has come to power in recent years, there was no evidence presented to the court indicating that it participates in the killing, disappearance, forced conscription, or even discrimination against any individuals formally affiliated with the government such as the respondent and his family. It sounds like they're putting some burden on the petitioner. And then when you go to the record, all we have is this 2007. Country conditions report that doesn't help a lot because there had been significant change in the political power structure in El Salvador between the time he gets dragged into proceedings and the time of the hearing. Well, Your Honor, with respect to the no evidence comment, I believe that was a searching of the State Department reports filed by DHS and finding no evidence there that would show that FMLN conducts these activities or that petitioner faces any objectively reasonable fear of future persecution. Any further questions? Okay. Thank you. Thank you, Your Honors. Rebuttal? Okay. The case just argued to be submitted for a decision. Thank you both for coming here today, and we'll proceed to the next case on the oral argument calendar, which is Harfouche v. Wiebe.
judges: Thomas, Paez, Savage